Adams, J.
The case of John Kilgore against Hiram J. Miller and others,pending in this court upon appeal, has been submitted to the court upon the pleadings and a transcript of the testimony taken at the trial in the court of common pleas.
The petition in the case was 61ed February 4th,1897,and *94 is in the nature of a creditor’s bill, wherein John Kilgore states that at the January term, 1896, of the court of common pleas,he recovered a judgment for $674.32,and $9.32 his costs, against Hiram J. Miller and Benjamin F. Stock-er; that that judgment has been a lien upon lots five, six and seven (5, 6 and 7), owned by Benjamin F. Stocker, ever since the 13th day of January 1896. A narty by the name of John Denzer, who, he says, held a mortgage on all three of these lots, was made a party defendant,as were also Benjamin F. Stocker, Elvira Stocker, Hiram J. Miller and a man by the name of Law. Harriet E. Miller was not made a party defendant,and the record shows that the summonses were served upon all these defendants,including John Denzer, on the 11th day of February, 1897, Harriet E. Miller on her own motion became a party defendant and filed her answer and cross-petition in the case on the 6th day of March, 1897, and in her amended answer and cross-petition, filed March 23rd, 1897, she sets up that she is the owner of a promissory note, dated September 30th, 1892, which note was secured by a mortgage executed by Benjamin F. Stocker and Elvira his wife, on lots five and six, and that she is the owner of the mortgage. And she claims and asks to have her note and mortgage paid out of the proceeds of the sale of this property, or at least out of lots five and six. I will come to lot seven later.
Elvira Stocker has filed her answer and cross-petition, by which she sets up the fads that she and Benjamin F. Stock-er are husband and wife and are living on lot seven as a homestead, and asks that that be set off to her as a homestead.
Except as to one matter, there .is no real controversy. The controversy is raised as to the inference to be drawn from certain facts, It seems that Harriet Miller borrowed $525,00, and bought this note and mortgage of John Denzer on the 13th of February, 1897,and on the 18th day of Feb *95 mary, 1897, she released lot seven from the operation of her mortgage. Lot seven, on the application of Elvira Stocker, was set off to her in these proceedings as a homestead. Lots five and.six were sold by the sheriff for $665.00, and this is a controversy over the distribution of that fund of. $665.00 growing out of lots five and six, and as bearing upon that controversy,it is admitted that lot number seven is worth the sum of one thousand dollars. It is on that state of facts that the legal question arises. ' I might say before I go to the law question that it is claimed by Kilgore that Harriet Miller, the purchaser of this mortgage, being a sister-in-law of Benjamin F. Stocker, bought this mortgage and released lot seven as a part of a conspiracy between the Millers and Stockers to defeat the collection of Kilgore’s judgment,and was therefore a fraud on Kilgore. There is no controversy aboutjthe facts. She bought the mortgage, she released the lot, and we think from those facts there is no necessary inference of fraud to be drawn. She did those acts, and she is responsible for the consequences legally of those acts and we think there is mo fraud in the matter. These parties had a legal right to preserve their homestead if they could,do so legally,and they had the right to have the aid financially or otherwise, of their friends or relatives in securing that homestead as long as they did no illegal act; and as it seems to us,this legal question stands exactly as if John Denzer still owned the mortgage, and it stands exactly the same as if lot seven had not been released from the operation of that mortgage. We have here three lots and a mortgage on all three of them, and that mortgage has been a lien on those lots since October 4th, 1892. We have a judgment that is a lien upon all three of the lots,and has been a lien only since the 13th day of January, 1896; and we have a homestead in lot seven which can not now, as long as that homestead exists, be brought to sale by that *96 judgment lien. We have a mortgage which would preclude the allowance of a homestead released as to the homestead.
It is claimed kfargument here that that calls for the operation of an equity rule that where one party has security on two funds,and a later lien holder has security on only one of the two funds,that the first lien holder will be compelled to exhaust his exclusive fund as far as it is applicable tojhis claim so the second party may have full equity left in his fund.
It is claimed here under that rule that this lien holder can compel this mortgagee tojjsell lot seven to wipe out the, homestead,or to lose the value of the homestead lot,having, released it from the mortgage.
The law of Ohio does not allow a judgment in and of itself to bring a homestead to sale. This judgment lien holder can in no way deprive Elvira Stocker of her homestead standing on his own rights. If he deprives her of her homestead,it must be under and through the rights of the mortgagee. Now, did the rights of that mortgagee in anyway inure to the benefit of that lien holder? We think that the question decided by the supreme court of Ohio in the 46 Ohio St., page 407, is so strictly analagous to the case at bar that the reason of it must decide the case at bar, It is the case of Mandel v. McClave, et al.,
“The contingent right of a wife, during her husband’s life, to be endowed of his real estate at his death, is property having a substantial value that may be ascertained with reasonable certainty from established tables of mortality, aided by evidence respecting the state of health and constitutional vigor of the husband and wife respectively.
“Where the wife has joined in a mortgage of the husband’s lands to secure his debt, upon a judicial sale of the premises,she may have the value of her contingent-right of dower,in the entire proceeds ascertained,and the husband’s entire interest therein shall be exhausted to pay the debt-before resorting to the interest of the wife therein.
H. H. Porter, for Plaintiff.
J. H. Mitchell, and Samuel Robinson, for Defendant.
“The release, in such mortgage, of her contingent right of dower does not inure to the benefit of the husband’s subsequent judgment creditors.”
In the case at bar the release from the Denzer — Harriet Miller mortgage of the homestead right does not inure to the benefit of the husband’s subsequent judgment creditors; the same question was decided as reported in the Sixth Circuit, 487, the opinion by Judge Upson. I read only the syllabus.
“When husband and wife have executed a mortgage, and a judgment is afterwards recovered against the husband, .the judgment creditor can not have the property sold, against the wishes of the mortgagee, for the payment of the mortgage as well as the judgment, and thus prevent the allowance of a homestead.”
This release of this mortgage on lot seven did not defeat the right of Kilgore; Kilgore still has his judgment lien on lot seven; he is in exactly the same position he was before, and by keeping his judgment alive at the termination of that homestead right he is in a position to assert in that property all the rights that the law gives him. It is his misfortune that the law gives Elvira Stocker a homestead right as against his judgment. There must be the same decree as in the court of common pleas.